UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| Yuichi Miyayama,<br><br>    Plaintiff,<br><br>v.<br><br>Steven H. Burke as executor of the Estate of Noriko Hosada, et al.,<br><br>    Defendants. | Case No. 2:20-cv-01683-DJA<br><br>**Order** |

    This is a tort and contract action arising out of an allegedly fraudulent real estate investment scheme. Plaintiff Yuichi Miyayama sues Defendants Steven H. Burke in his individual capacity ("Burke"); Steven H. Burke in his capacity as executor for the estate of his mother, Noriko Hosada ("Hosada"); the Law Office of Steven H. Burke, LLC ("TLOSHB"); S&Z Investments LLC ("S&Z"), and Mont E. Tanner ("Tanner"), amongst other Defendants not relevant to the instant motions. Plaintiff sues these parties for damages, claiming breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, unjust enrichment, conversion, and fraud. (ECF No. 34). Tanner counterclaims against Plaintiff for damages, claiming breach of an attorney fee agreement and abuse of process. (ECF No. 48).

    Burke, TLOSHB, and S&Z Investments move to dismiss Plaintiff's complaint, arguing that Plaintiff's allegations are insufficient to state a claim. (ECF No. 52). Plaintiff moves to dismiss Tanner's counterclaims, arguing that Tanner's allegations are insufficient. (ECF No. 65). Because the Court finds that only one of Plaintiff's claims is insufficient, it grants Burke, TLOSHB, and S&Z Investments' motion in part. Because the Court finds Tanner's allegations insufficient, it grants Plaintiff's motion. The Court finds these matters properly resolved without a hearing. LR 78-1.

**I.      Background.**

After representing herself as a realtor, real estate broker, real estate property manager, agent, and fiduciary, Hosada began accepting money from Plaintiff—a resident of Japan—to purchase property in Clark County and rent out and manage those properties on Plaintiff's behalf. (ECF No. 34 at 4). Hosada purportedly purchased properties in bankruptcy and subject to all prior claims, leases, and encumbrances. (*Id.* at 5). But instead of purchasing the properties and paying off the liens with Plaintiff's money, Hosada would forge deeds for the properties and ask Plaintiff for large sums to allegedly pay off liens. (*Id.* at 5, 9). Plaintiff claims that he only owns one of the twenty-four properties Hosada allegedly purchased with Plaintiff's money. (*Id.* at 10).

Plaintiff asserts that Burke, an attorney, would help Hosada in the fraudulent scheme, but Plaintiff does not otherwise explain how. (*Id.* at 13). Plaintiff does assert, however, that in lieu of using his money as he anticipated, Hosada would split the money between herself and Burke. (*Id.* at 5). Hosada would allegedly deposit the money into various bank accounts belonging to Hosada or jointly to Hosada and Burke. (*Id.* at 5). Hosada would also transfer the money to Burke and TLOSHB in small, frequent amounts, which Burke would then spend. (*Id.* at 6-9).

On September 28, 2020, Burke allegedly called Plaintiff's counsel and stated that he did not "know what happened to any money [Hosada] took from [Plaintiff]." (*Id.* at 18). Burke added that his mother had never sent him Plaintiff's money, that he had nothing to do with Hosada's real estate business, and that he had separated from Hosada's business matters after some point in 2018. (*Id.*). Plaintiff claims that, originally, he relied on Burke's statements and did not include him in the lawsuit until later. (*Id.* at 18-19). Plaintiff then added Burke after learning that, contrary to Burke's assertions, Burke had been receiving portions of Plaintiff's money well into 2019. (*Id.* at 18-19).

### A.     Burke, TLOSHB, and S&Z's motion to dismiss.

Burke, TLOSHB, and S&Z moved to dismiss Plaintiff's claims against them. (ECF No. 52). Alternatively, they move for summary judgment because they attached declarations and an email string to their motion. (*Id.* at 6-9). TLOSHB and S&Z assert that because Plaintiff has only named them, but not asserted any causes of action against them, that the Court should

dismiss them entirely. (*Id.* at 9). Burke argues that the claims asserted against him in his individual capacity—breach of fiduciary duty, unjust enrichment, conversion, and fraud—should be dismissed for failure to state a claim. (*Id.* at 9-15). They conclude by arguing that Plaintiff should not be given leave to amend. (*Id.* at 15).

Plaintiff responds and asks the Court to disregard the additional documents Burke, TLOSHB, and S&Z attached to their motion and to consider it as a motion to dismiss. (ECF No. 63). Plaintiff also asks this Court to liberally construe his mistake of not asserting causes of action against TLOSHB and S&Z. (*Id.* at 4-7). Plaintiff then argues that his claims are sufficient to withstand a motion to dismiss. (*Id.* at 7-20). Burke, TLOSHB, and S&Z reply to bolster their arguments but raise no new arguments that need to be summarized here. (ECF No. 68).

### B. *Plaintiff's motion to dismiss Tanner's counterclaims.*

On September 27, 2021, Tanner filed an answer and counterclaim, but only clicked the box for a counterclaim when filing it. (ECF No. 48). Tanner's counterclaim was thus filed on the docket, while his answer was technically not. (ECF No. 49). Tanner then filed his answer on December 22, 2021. (ECF No. 97). Tanner's counterclaims include breach of the attorney fee agreement and abuse of process claims.

Plaintiff moves to dismiss Tanner's counterclaims. (ECF No. 65). Plaintiff asserts that the breach of attorney fee agreement fails because Plaintiff did not retain Tanner. (*Id.* at 3-5). He asserts that Tanner's abuse of process claim is misstated. (*Id.* at 5-6).

Tanner responds and argues that he did not file a counterclaim or answer because his filing was "expressly rejected by the Court." (ECF No. 78). In the alternative, Tanner argues that Plaintiff admitted that Hosada was his agent, and thus, because Hosada retained Tanner, Plaintiff retained Tanner. (*Id.* at 2-9). To bolster this argument, Tanner quotes from a CM/ECF filing, two durable powers of attorney in which Plaintiff appointed his son—Gen Miyayama, and settlement agreements between Plaintiff and third parties. (*Id.*). Tanner concedes to dismissal of his claim for abuse of process. (*Id.* at 9).

In reply, Plaintiff argues that Tanner's response was untimely by two days. (ECF No. 79). He adds that the Clerk's office never rejected Tanner's counterclaim, only his answer. (*Id.* at 3-

5). Plaintiff concludes by arguing that Tanner's arguments—even including his unverified documents—still fail to establish a breach of contract claim. (*Id.* at 5-6).

**II.      Standard.**

"A dismissal under Federal Rule of Civil Procedure 12(b)(6) is essentially a ruling on a question of law." *North Star Int'l v. Ariz. Corp. Comm.*, 720 F.2d 578, 580 (9th Cir. 1983). At minimum, a plaintiff should state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint need not contain detailed factual allegations, but it must contain more than "a formulaic recitation of the elements of a cause of action." *Id.* at 555. The Rule 8(a) notice pleading standard requires the plaintiff to "give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Id.* (internal quotation marks and citation omitted). The "plausibility standard" does not impose a "probability requirement"; rather, it requires a complaint to contain "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.*

In considering a motion to dismiss for failure to state a claim upon which relief may be granted, all material allegations in the complaint are accepted as true and are to be construed in a light most favorable to the non-moving party. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* A court should assume the veracity of well-pleaded factual allegations and "then determine whether they could plausibly give rise to an entitlement of relief." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (quotation marks, citation, and brackets omitted). Thus, a complaint may be dismissed as a matter of law for "(1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim."

*Smilecare Dental Group v. Delta Dental Plan*, 88 F.3d 780, 783 (9th Cir. 1996) (quoting *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984)).

The United States Supreme Court's decision in *Ashcroft v. Iqbal* provides a two-step framework for considering the sufficiency of factual allegations subject to a motion to dismiss under FRCP 12(b)(6). First, the Court may choose to begin by identifying which of the complaint's factual allegations are no more than "legal conclusions" or "mere conclusory statements," because "the tenant that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678, 680. The inquiry then becomes whether the remaining nonconclusory allegations make it plausible that an actionable claim exists. *Id.* at 681.

**III.   Discussion.**

   **A.   *The Court will address both motions as motions to dismiss, not for summary judgment.***

A court may consider material that is properly submitted as part of the complaint on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). There are two exceptions. First, a court may consider documents which are not attached to the complaint if no party contests their authenticity, and the complaint necessarily relies on them. *See id.* Second, a court may take judicial notice of "matters of public record." *Id.*; Fed. R. Evid. 201. If the documents supplied by defendant do not fall within either exception, the court must convert the motion to dismiss to one for summary judgment and "all parties must be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(d). The court's decision to exclude extraneous matter is discretionary. *Smith v. Wolf Performance Ammunition*, No. 2:13-cv-2223-JCM-NJK, 2015 WL 2359063, at *11 (D. Nev. May 18, 2015); (citing *Cooper v. Pickett*, 137 F.3d 616, 623 (9th Cir. 1997)).

The Court declines to consider either Burke, TLOSHB, and S&Z's or Tanner's extraneous material and considers their motions as motions to dismiss. Burke, TLOSHB, and S&Z's documents do not fall into either exception under which the Court could consider them

without converting the motion into one for summary judgment. Nor do Tanner's. The complaints also do not necessarily rely on the documents, and their content is contested. The Court thus exercises its discretion to exclude the documents that Burke, TLOSHB, and S&Z attach to their motion to dismiss, and the documents Tanner attaches to his response to Plaintiff's motion to dismiss. The Court considers both motions under dismissal standards.

### B. Burke, TLOSHB, and S&Z's motion to dismiss.

#### 1. The Court dismisses TLOSHB and S&Z.

A complaint must give a defendant "fair notice of what the…claim[s] [are] and the grounds upon which [they] rest. *Twombly*, 550 U.S. at 555 (2007). Here, the Court cannot find that Plaintiff's complaint gives TLOSHB or S&Z fair notice of the causes of action against them because Plaintiff does not include these parties in the causes of action. While Plaintiff urges the Court to overlook this mistake and find the factual allegations sufficient to withstand a motion to dismiss, the Court has neither the time nor duty to rewrite Plaintiff's complaint. *See Dillman v. Toulumne County*, No. 1:13-cv-00404-LSO-SKO, 2014 WL 2875571, at *2 (E.D. Cal. June 24, 2014). The Court thus dismisses TLOSHB and S&Z from this action with leave to amend.

#### 2. The Court grants Burke's motion to dismiss the breach of fiduciary duty claim.

In Nevada, "a breach of fiduciary duty claim seeks damages for injuries that result from the tortious conduct of one who owes a duty to another by virtue of a fiduciary relationship." *Stalk v. Mushkin*, 125 Nev. 21, 28, 119 P.3d 838, 843 (2009). In Nevada, a claim for breach of fiduciary duty has three elements: (1) existence of a fiduciary duty; (2) breach of the duty; and (3) the breach proximately cased the damages. *Klien v. Freedom Strategic Partners, LLC*, 55 F. Supp. 2d 1152, 1162 (D. Nev. 2009). A fiduciary relationship creates the highest duty of loyalty known to the law. RESTATEMENT (THIRD) OF TORTS § 16 (2020). Fiduciary relationships can be contractual or informal, but all generally consist of the elements of trust and reliance on the fiduciary by another and a degree of control by the fiduciary over the other party's person, property, or affairs. *See id.*

The Court dismisses Plaintiff's breach of fiduciary claim against Burke. While Plaintiff has alleged that he had a fiduciary relationship with Hosada, he has not alleged sufficient facts to establish a fiduciary relationship between him and Burke, the first element of the claim. Plaintiff argues that Burke owned joint accounts with Hosada and that Burke and Hosada would not use Plaintiff's money as intended. But just because Burke exercised control over Plaintiff's money by receiving and spending it does not mean that the two had a fiduciary relationship. Plaintiff does not allege that he even knew Burke received some of his money, let alone that he placed a special trust in or reliance on Burke to put the money towards its intended use.[1] And just because Burke "assisted Hosada in [her] fraudulent scheme" does not, by itself, create a fiduciary relationship between Burke and Plaintiff, even if Burke was acting as Plaintiff's agent (which Plaintiff argues but does not allege in his complaint).[2] The Court thus grants Burke's motion to dismiss Plaintiff's claim for breach of fiduciary duty as alleged against Burke.

---

[1] Plaintiff misuses the term "constructive trust" in responding to Burke's motion. Under Nevada law, a constructive trust is an equitable remedy. *See Stirling Mortimer Global Property Fund FCC Ltd. v. Roberts*, No. 2:13-cv-00301-GMN-NJK, 2013 WL 1874762, at *3 (D. Nev. May 3, 2013). Nevada courts sometimes also evaluate constructive trusts as independent causes of action. *See id.* To impose a constructive trust, Nevada courts require that: "(1) a confidential relationship exists between the parties; (2) retention of legal title by the holder thereof against another would be inequitable; and (3) the existence of such a trust is essential to the effectuation of justice." *Waldman v. Maini*, 195 F.3d 850, 857 (Nev. 2008). Plaintiff seems to assert that, because Burke received Plaintiff's money, knew its source, and assisted Hosada in defrauding Plaintiff, that Burke held Plaintiff's money in a "constructive trust," creating a fiduciary relationship between the two. (ECF No. 63 at 9-10). But a constructive trust is not a precursor to a fiduciary relationship. Rather, it is an equitable remedy that the Court may impose *after* a party establishes a fiduciary relationship. Plaintiff has not alleged sufficient facts to establish a fiduciary relationship between him and Burke and the Court cannot impose a constructive trust. Even if the Court were to consider a constructive trust as a separate cause of action, Plaintiff has not plead it in his complaint.

[2] Plaintiff also appears to argue that Burke is liable for breach of fiduciary duty under some form of aiding and abetting theory. (ECF No. 63 at 10). But Plaintiff's complaint contains no mention of this type of claim. Moreover, the authority Plaintiff cites to support this argument are distinguishable, and Plaintiff makes no attempt to explain why they are applicable to the facts at hand. Rather, the cases Plaintiff cites discuss breaches of trust, breaches of fiduciary duty involving ERISA claims, and the fiduciary relationship between investment advisor and investor. (ECF No. 63 at 10) (citing *Takiguchi v. MRI Int'l Inc.*, 47 F. Supp. 3d 1100, 1120 (D. Nev. 2014) (discussing when a fiduciary relationship arises between an investment fund's management and investors); *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 294 (2d Cir. 2006) (discussing when a bank

           3.        <u>The Court denies Burke's motion to dismiss the unjust enrichment claim.</u>

The doctrine of unjust enrichment applies when there is no legal contract, but the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another or should pay for.  *See Snider v. Lithia Real Est., Inc.*, No. 3:11-cv-0596-HDM, 2011 WL 4062375, at *1-2 (D. Nev. Sept. 12, 2011).  The elements are: (1) a benefit conferred on the defendant by the plaintiff; (2) appreciation by the defendant of such a benefit; and (3) acceptance and retention by the defendant of such a benefit.  *Unionamerica Mortg. & Equity Tr. v. McDonald*, 97 Nev. 210, 211-12, 626 P.2d 1272, 1273 (1981).  An action based on a theory of unjust enrichment is not available when there is an express, written contract or agreement.  *Leasepartners Corp v. Robert L. Brooks Trust*, 113 Nev. 747, 756, 942 P.2d 182, 187 (1997).

    The Court denies Burke's motion to dismiss Plaintiff's unjust enrichment claim.  In his motion to dismiss, Burke argues that Plaintiff failed to assert that Burke knew the money he received came from Plaintiff.  But Burke ignores the portions of Plaintiff's complaint in which he asserts that Burke and Hosada "would divide Mr. Miyayama's money between themselves," and that Burke "assisted Ms. Hosada in this fraudulent scheme." (ECF No. 34 at 5, 13).  Plaintiff has detailed: (1) how much money Hosada conferred to Burke and when; (2) that Burke appreciated the benefit and its source; and (3) that Burke retained and spent the money.

    Additionally, in his motion, Burke does not raise the issue of an express, written contract, although Burke raises this argument in his reply.  Nonetheless, Plaintiff raises unjust enrichment in the alternative, and there is nothing in the complaint suggesting that there was an express, written contract between Burke and Plaintiff.  The Court thus denies Burke's motion to dismiss plaintiff's unjust enrichment claim.

---

aids and abets a breach of fiduciary duty in the context of bank fraud); RESTATEMENT (SECOND) OF TRUSTS § 326 (1959) (discussing the liability of third parties who participate with trustees in breaching trusts); *Donovan v. Schmoutey*, 592 F. Supp. 1361, 1396 (D. Nev. 1984) (discussing breach of trust and fiduciary duty in the context of ERISA trust accounts)).

4. <u>The Court denies Burke's motion to dismiss the conversion claim.</u>

Conversion is "a distinct act of dominion wrongfully exerted over another's personal property in denial of, or inconsistent with his title or rights therein *or in derogation, exclusion, or defiance of such rights*." *M.C. Multi-Family Development, L.L.C. v. Crestdale Associates, Ltd.*, 124 Nev. 901, 910-911, 193 P.3d 536, 542-43 (Nev. 2008) (internal citations and quotations omitted) (emphasis in original). "Additionally, conversion is an act of general intent, which does not require wrongful intent and is not excused by care, good faith, or lack of knowledge." *Id.* (internal citations and quotations omitted). "Whether conversion has occurred is…a question of fact for the jury." *Id.* (internal citations and quotations omitted).

The Court denies Burke's motion to dismiss Plaintiff's claim for conversion. Burke improperly cites *M.C. Multi-Family Development* for the proposition that the elements for conversion include a "distinct *and intentional act* of dominion" and that "the elements to sustain a cause of action for [c]onversion require an *intentional* act." (ECF No. 52 at 12) (emphasis added). This is the entire basis for Burke's argument. But the word "intentional" does not even appear in the *M.C. Multi-Family Development* opinion. Worse, Burke's assertion is completely contradicted by the opinion. As directly quoted above, the Nevada Supreme Court in *M.C. Multi-Family Development* stated, "conversion is an act of general intent, *which does not require wrongful intent and is not excused by care, good faith, or lack of knowledge.*" This sentence immediately follows the one to which Burke apparently cited to support his argument. And immediately following that sentence is the one explaining that whether conversion occurred is "a question of fact for the jury." Burke conveniently omitted these sentences which clearly contradict his argument. Burke should not take future liberties with the law and his presentation of it to this Court. The Court denies Burke's motion to dismiss the conversion claim against him.

5. <u>The Court denies Burke's motion to dismiss the fraud/intentional misrepresentation claim.</u>

To state a claim for fraudulent misrepresentation, a plaintiff must allege: (1) a false representation by the defendant that is made with either knowledge or belief that it is false or

without sufficient foundation; (2) an intent to induce another's reliance; and (3) damages that result from this reliance. *Nelson v. Heer*, 123 Nev. 217, 225-26, 163 P.3d 420, 426 (Nev. 2007). A plaintiff must allege fraud "with particularity." Fed. R. Civ. P. 9(b). The circumstances constituting the alleged fraud must be specific enough to give defendants notice of the particular misconduct alleged so that they can defend against the charge. *Less v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

The Court denies Burke's motion to dismiss Plaintiff's fraud claim against him. First, Plaintiff has alleged a false representation by Burke when Burke called Plaintiff's attorneys and represented that he separated himself from Hosada's businesses after learning of her fraudulent scheme. Second, Plaintiff has alleged that Burke said these things with an intent to induce him not to sue Burke.[3] Third, Plaintiff has asserted that, between the time Burke made these representations and Plaintiff discovered they were false, Burke continued to dissipate Plaintiff's money, causing injury. While Burke asserts that Plaintiff failed to plead sufficient detail to support a fraud claim, Plaintiff has described when Burke misrepresented his knowledge (before Plaintiff filed the lawsuit), what Burke said (that he did not know what happened to Plaintiff's investments and separated himself from Hosada's businesses in 2018), and why Plaintiff believes those statements were false (bank statements show Burke received Plaintiff's money well into 2019). The Court thus denies Burke's motion to dismiss Plaintiff's fraud claim against him.

### C. Tanner's motion to dismiss.

#### 1. Tanner's counterclaim was not stricken.

Tanner argues in response to Plaintiff's motion to dismiss his counterclaims that his "Answer and Counterclaim was expressly rejected by the Court [and thus]…the Motion to Dismiss the Counterclaim was a rogue document and required no response…" (ECF No. 78 at 2).

---

[3] In his response, Plaintiff asserts that he received a call from Burke prior to filing his lawsuit. (ECF No. 34 at 13, 18-19). However, Plaintiff's complaint asserts that Burke called on September 28, 2020 while Plaintiff filed his lawsuit on September 11, 2020. This discrepancy appears to be inadvertent, and Burke did not raise it. Nonetheless, the Court reminds the parties to be clear in their dates and arguments. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (explaining that courts must construe the complaint in favor of the complaining party).

However, the Court did not reject Tanner's filing. Instead, the CM/ECF system only registered the document as a Counterclaim because that was the box Tanner checked. (ECF No. 49). Thus, at the time Plaintiff moved to dismiss, only a Counterclaim was technically on the docket, meaning that Plaintiff's motion to dismiss was appropriate.

      2. <u>The Court grants Plaintiff's motion to dismiss the breach of attorney fee agreement claim.</u>

A breach of contract claim under Nevada law requires: "(1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Med. Providers Fin. Corp. II v. New Life Centers, L.L.C.*, 818 F. Supp. 2d 1271, 1274 (D. Nev. 2011). Generally, a contract is valid and enforceable if there has been "an offer and acceptance, meeting of the minds, and consideration." *May v. Anderson*, 121 Nev. 668, 672, 119 P.3d 1254, 1257 (2005). In Nevada, an agent binds a principal when it acts under "actual authority, express or implied, or apparent authority." *See Dixon v. R.H. Thatcher*, 103 Nev. 414, 417, 742 P.2d 1029, 1031 (Nev. 1987).

"An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." *Jones v. All American Auto Protection, Inc.*, No. 3:14-cv-00199-LRH-WGC, 2015 WL 7566685, at *3 (D. Nev. Nov. 24, 2015) (quoting RESTATEMENT (THIRD) OF AGENCY § 2.01 (2006)). "A key requirement in classic common law agency is that the principal is in control of the agent's actions." *Id.* (citing *United States v. Bonds*, 608 F.3d 495, 506 (9th Cir. 2010)). Apparent authority is "that authority which a principal holds his agent out as possessing or permits him to exercise…or represent himself as possessing, under such circumstances as to estop the principal from denying its existence." *Id.* "Apparent authority is, in essence, an application of equitable estoppel, of which reasonable reliance is a necessary element." *Great American Ins. Co. v. General Builders, Inc.*, 113 Nev. 346, 352, 934 P.2d 257, 261 (1997), "Apparent authority, including a third party's reasonable reliance on such authority, is a question of fact." *Id.*

The Court grants Plaintiff's motion to dismiss Tanner's counterclaim for breach of the attorney fee agreement. While Tanner pleads the existence of a valid contract, a breach of that contract, and damage as a result, he asserts a contract between him and *Hosada*, not Plaintiff. (ECF No. 48 at 5-6). Tanner alleges that Hosada was acting as Plaintiff's agent, and thus bound Plaintiff to the retainer agreement between Hosada and Tanner. But his claims are unsubstantiated. Tanner asserts that Plaintiff "retained Ms. Hosada as his…agent," that "Ms. Hosada retained" Tanner, and that "Plaintiff by and through his agent, Ms. Hosada breached his agreement to pay [Tanner's] attorney fees." (*Id.*). Based on that tenuous association, Tanner claims that Plaintiff owes him $75,000 in attorneys' fees. (*Id.*). But Tanner does not assert that Hosada was acting in her capacity as Plaintiff's agent when she retained him. Nor does he assert that she was acting at Plaintiff's behest or under his control. Tanner also fails to assert that Hosada acted with apparent authority on which Tanner relied. Other than the words "by and through his agent," Tanner does not connect himself with Plaintiff at all. The Court thus grants Plaintiff's motion to dismiss this counterclaim.[4]

    3. <u>The Court grants Plaintiff's motion to dismiss the abuse of process claim.</u>

Tanner concedes dismissal of his counterclaim for abuse of process. (ECF No. 78 at 9-10). The Court thus grants Plaintiff's motion to dismiss this counterclaim.

  **D.** ***The Court grants Plaintiff and Tanner leave to amend.***

If the Court grants a motion to dismiss, it must then decide whether to grant leave to amend. The Court should "feely give" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant…undue prejudice to the opposing party by virtue of amendment, [or] futility of the amendment…" Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Generally, courts only deny leave to amend when amendment cannot cure deficiencies in the complaint. *See DeSoto v. Yellow Freight Sys. Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

---

[4] In his reply, Plaintiff argues that Tanner's response to Plaintiff's motion to dismiss was untimely and that the Court should disregard it. (ECF No. 79 at 2-5). However, because the Court dismisses Tanner's sole remaining claim on its merits, it does not address this argument.

Although Burke urges the Court to deny Plaintiff leave to amend, he has failed to show that amendment would be futile. Plaintiff could cure the deficiencies in his complaint. Similarly, Tanner could presumably cure the deficiencies in his counterclaim. The Court thus gives Plaintiff and Tanner leave to amend.

**IT IS THEREFORE ORDERED** that Burke, TLOSHB, and S&Z's motion to dismiss is **granted in part**: TLOSHB and S&Z are dismissed from the action and Plaintiff's claim for breach of fiduciary duty as alleged against Burke is dismissed. Plaintiff is granted leave to amend his complaint.

**IT IS FURTHER ORDERED** that Plaintiff's motion to dismiss Tanner's counterclaims is **granted**. Tanner is granted leave to amend his counterclaims.

DATED: December 29, 2021

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE