1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

Yuichi Miyayama,

                Plaintiff,

    v.

Steven H. Burke as executor of the Estate of
Noriko Hosada, et al.,

                Defendants.

Case No. 2:20-cv-01683-DJA

**Order**

This is a tort and contract action arising out of an allegedly fraudulent real estate investment scheme that Defendant Noriko Hosada ran with her son and Defendant Steven Burke and Defendant Mont Tanner. Plaintiff Yuichi Miyayama—a citizen of Japan—sues Burke in his individual capacity; Burke in his capacity as executor for the estate of his mother ("Hosada"); the Law Office of Steven H. Burke, LLC ("TLOSHB"); and Tanner, amongst other Defendants not relevant to the instant motions. Plaintiff sues for damages, claiming—in relevant part—unjust enrichment, conversion, and aiding and abetting breach of fiduciary duty. (ECF No. 106). Tanner counterclaims against Plaintiff for damages, claiming that, because Hosada entered an agreement for attorney's fees with Tanner as Plaintiff's agent, Plaintiff breached the agreement by not paying Tanner's attorney's fees. (ECF No. 102).

Plaintiff moves to dismiss Tanner's counterclaim, arguing that Tanner failed to allege that Hosada acted as Plaintiff's agent in retaining Tanner. (ECF No. 105). Burke and TLOSHB move to dismiss Plaintiff's claims of unjust enrichment, conversion, and aiding and abetting breach of fiduciary duty. (ECF No. 110). Tanner filed a joinder to Burke and TLOSHB's motion, with points and authorities like a motion to dismiss but not filed as a separate motion. (ECF No. 111). Plaintiff also moved to extend the discovery deadlines. (ECF No. 114).

1    Because the Court finds that Tanner does not sufficiently allege that Hosada acted as

2    Plaintiff's agent, it grants Plaintiff's motion to dismiss Tanner's counterclaim.  (ECF No. 105).

3    Because the Court finds that Plaintiff has sufficiently alleged unjust enrichment and conversion

4    against TLOSHB, but not aiding and abetting breach of fiduciary duty against Burke and

5    TLOSHB, it grants in part and denies in part Burke and TLOSHB's motion to dismiss.  (ECF No.

6    110).  The Court construes Tanner's joinder as a freestanding motion to dismiss.  Because

7    Tanner's joinder follows Burke and TLOSHB's motion to dismiss almost verbatim, the Court

8    grants it in part and denies it in part for the same reasons.  (ECF No. 111).  Because the Court

9    finds that Plaintiff has neither demonstrated good cause nor excusable neglect, it denies Plaintiff's

10   motion to extend the discovery deadlines.  The Court finds these matters properly resolved

11   without a hearing.  LR 78-1.

12   **I.      Background.**

13          ***A.      Procedural background.***

14          The Court previously granted Burke, TLOSHB, and S&Z Investments LLC's motion to

15   dismiss in part, dismissing TLOSHB and S&Z from the action and dismissing Plaintiff's claim

16   for breach of fiduciary duty against Burke.  (ECF No. 99).  The Court also granted Plaintiff's

17   motion to dismiss Tanner's counterclaim.  (*Id.*).  Tanner filed an amended counterclaim (ECF No.

18   102), which Plaintiff moved to dismiss (ECF No. 105).  Tanner responded (ECF No. 109), and

19   Plaintiff replied (ECF No. 112).

20          Plaintiff also filed a second amended complaint adding a claim for aiding and abetting

21   breach of fiduciary duty against Burke and TLOSHB and claims for unjust enrichment and

22   conversion against TLOSHB.  (ECF No. 106).  Burke and TLOSHB moved to dismiss these

23   claims.  (ECF No. 110).  Tanner filed a joinder to that motion, which followed Burke and

24   TLOSHB's motion almost verbatim.  (ECF No. 111).  Plaintiff responded to both.  (ECF Nos.

25   113, 115).  Burke, TLOSHB, and Tanner replied.  (ECF Nos. 116, 118).

26          Finally, Plaintiff moved to extend all case-related deadlines.  (ECF No. 114).  Burke,

27   TLOSHB, and Tanner responded.  (ECF Nos. 117, 119).  Plaintiff replied.  (ECF No. 120).

28

1

### B.    Factual background.

Plaintiff alleges that he hired Hosada as a realtor, real estate broker, real estate property manager, agent, and fiduciary to buy homes for Plaintiff, rent them out, and manage them for Plaintiff in exchange for a fee.  (ECF No. 106).  Hosada would buy homes subject to liens and ask Plaintiff for money to pay off the liens.  (*Id.* at 5).  Once Plaintiff would send Hosada the money, however, Hosada would split it between her, Burke, and TLOSHB, rather than paying off the liens.  (*Id.* at 5-8).  The houses would fall into foreclosure but Hosada would tell Plaintiff that he owned the property free and clear, sending him fraudulent deeds and forged documents that Burke and Tanner allegedly helped Hosada create.  (*Id.* at 9-10).  Plaintiff alleges that Hosada would pay Burke and Tanner portions of Plaintiff's money in exchange for creating these false documents.  (*Id.*).

Tanner counterclaims that Hosada entered into an attorney fee agreement with Tanner as an agent for Plaintiff.  (ECF No. 102).  Tanner alleges that, because Hosada was acting as Plaintiff's agent when she entered into the agreement, Plaintiff is responsible for paying Tanner's fees as the principal.  (*Id.*).  Tanner asserts that Plaintiff breached the agreement by failing to pay.  (*Id.*).

## II.    Standard.

"A dismissal under Federal Rule of Civil Procedure 12(b)(6) is essentially a ruling on a question of law."  *North Star Int'l v. Ariz. Corp. Comm.*, 720 F.2d 578, 580 (9th Cir. 1983).  At minimum, a plaintiff should state "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The complaint need not contain detailed factual allegations, but it must contain more than "a formulaic recitation of the elements of a cause of action."  *Id.* at 555.  The Rule 8(a) notice pleading standard requires the plaintiff to "give the defendant fair notice of what the…claim is and the grounds upon which it rests."  *Id.* (internal quotation marks and citation omitted).  The "plausibility standard" does not impose a "probability requirement"; rather, it requires a complaint to contain "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Where a

1
2

complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.*

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17

In considering a motion to dismiss for failure to state a claim upon which relief may be granted, all material allegations in the complaint are accepted as true and are to be construed in a light most favorable to the non-moving party. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* A court should assume the veracity of well-pleaded factual allegations and "then determine whether they could plausibly give rise to an entitlement of relief." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (quotation marks, citation, and brackets omitted). Thus, a complaint may be dismissed as a matter of law for "(1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *Smilecare Dental Group v. Delta Dental Plan*, 88 F.3d 780, 783 (9th Cir. 1996) (quoting *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984)).

18
19
20
21
22
23
24
25

The United States Supreme Court's decision in *Ashcroft v. Iqbal* provides a two-step framework for considering the sufficiency of factual allegations subject to a motion to dismiss under FRCP 12(b)(6). First, the Court may choose to begin by identifying which of the complaint's factual allegations are no more than "legal conclusions" or "mere conclusory statements," because "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678, 680. The inquiry then becomes whether the remaining nonconclusory allegations make it plausible that an actionable claim exists. *Id.* at 681.

26
27
28

1

2

### III.    Discussion.

###    *A.    The Court grants Plaintiff's motion to dismiss Tanner's counterclaim.*

"Under the *Erie* doctrine…it is long since settled that federal courts sitting in diversity apply state substantive law and federal procedural law." *Miller v. Sawant*, 18 F.4th 328, 227 (9th Cir. 2021) (internal citations and quotations omitted) (explaining that federal pleading standards, not state, apply in federal court).  A breach of contract claim under Nevada law requires: "(1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Med. Providers Fin. Corp. II v. New Life Centers, L.L.C.*, 818 F. Supp. 2d 1271, 1274 (D. Nev. 2011) (citing *Richardson v. Jones*, 1 Nev. 405 (1865)).  Generally, a contract is valid and enforceable if there has been "an offer and acceptance, meeting of the minds, and consideration." *May v. Anderson*, 121 Nev. 668, 672, 119 P.3d 1254, 1257 (2005).  In Nevada, an agent binds a principal when it acts under "actual authority, express or implied, or apparent authority." *See Dixon v. R.H. Thatcher*,103 Nev. 414, 417, 742 P.2d 1029, 1031 (Nev. 1987).

*Kristensen v. Credit Payment Services* stands for the proposition that, under federal pleading standards, while a party need not plead every nuance of an agency relationship, the party must offer sufficient facts to support an inference that an agency relationship existed.  *See Kristensen v. Credit Payment Services*, 12 F.Supp.3d 1292, 1301-1302 (D. Nev. 2014) (citing *Iqbal*, 556 U.S. at 696).  There, the plaintiff sued LeadPile, LLC and Click Media, LLC under the Telephone Consumer Protection Act for telling marketers to send text messages—like one plaintiff received—*en masse. Id.*  LeadPile and Click Media moved to dismiss, arguing that the plaintiff insufficiently plead that they send the text through their agents, the marketers.  *Id.*  The court disagreed.  *Id.* at 1302.  The plaintiff had alleged that defendant payday lenders had contracted with LeadPile to generate customers.  *Id.* at 1297, 1302.  LeadPile in turn contracted with Click Media to generate leads and drive web traffic.  *Id.* at 1297, 1302.  Click Media then directed another unnamed entity to send the texts.  *Id.*  Those messages contained a link which took consumers to a site controlled by Click Media with a loan application.  *Id.*  After completing the loan application, the consumer was directed to a site owned by LeadPile.  *Id.*  LeadPile would then sell the leads to the payday lenders.  *Id.*  Based on these allegations—demonstrating a

1    "downhill" series of contractual relationships, the benefits of which contracts flowed back

2    "uphill"—the Court found that the plaintiff had plausibly alleged an agency relationship between

3    LeadPile and Click Media and the marketer that sent the text. *Id.* at 1302.

4         *WuMac, Inc. v. Eagle Canyon Leasing, Inc.* stands for the proposition that allegations

5    regarding an agency relationship in a breach of contract claim must assert facts about the

6    principal's involvement with the contract. *See WuMac, Inc. v. Eagle Canyon Leasing, Inc.*, No.

7    2:12-cv-0926-LRH-VCF, 2013 WL 593396, at *2 (D. Nev. Feb. 14, 2013).  There, Eagle Canyon

8    Leasing, Inc. moved to dismiss WuMac, Inc.'s claim that Eagle had breached a contract to buy an

9    airplane on the grounds that it had not entered the contract with WuMac. *Id.* at *1-2.  Instead,

10   WuMac had contracted with a third-party, Atlanta Jet, Inc. for the airplane. *Id.*  The court denied

11   the motion to dismiss, finding that WuMac had sufficiently alleged an agency relationship

12   between Atlanta Jet and Eagle. *Id.*  WuMac alleged that Eagle planned to buy the plane from

13   Atlanta Jet, that Atlanta Jet and Eagle maintained their brokerage relationship for years to buy

14   planes, and that WuMac had met with Eagle representatives to discuss the plane at issue. *Id.*

15   Based on these allegations, the Court found that WuMac sufficiently alleged a breach of contract

16   claim against Eagle based on the agency relationship between Eagle and Atlanta Jet. *Id.*

17        The Court grants Plaintiff's motion to dismiss Tanner's counterclaim for breach of the

18   attorney fee agreement. [1]    As a preliminary matter, Tanner's claims are governed by Federal

19   procedural law, meaning that the federal standards for dismissal—rather than Nevada's notice-

20

21   _____

22   [1] Tanner cites to his initial disclosures—which he attaches to his response—explaining that they
     include documents signed by Hosada on Plaintiff's behalf.  (ECF No. 109 at 6-7).  Plaintiff
23   responds that the Court should not consider these documents because they are outside the
     pleadings.  (ECF No. 112 at 4 n.1).  In its previous order, the Court declined to address Tanner's
24   extraneous material and convert the motion into one for summary judgment.  (ECF No. 99 at 5).
     The Court explained that the material did not fall under the two recognized exceptions:
25   (1) documents attached to the complaint the authenticity of which no party contests and which the
     complaint necessarily relies upon; or (2) matters of public record.  (*Id.*).  The Court finds the
26   same here.  Tanner's initial disclosures are extraneous and do not fall under either exception.  The
     Court thus declines to consider them—and the arguments based on them—and convert the motion
27   to dismiss into one for summary judgment.

28

1   pleading standard—applies.  Tanner asserts a contract between him and Hosada to stop

2   foreclosure sales on certain properties.  He claims that Hosada breached this agreement,

3   apparently by not paying Tanner's fees.  Finally, he claims that he suffered damage in an amount

4   "which will be determined at the time of trial."  (ECF No. 102 at 6).  The crux of Tanner's claim

5   against Plaintiff is that Hosada acted as Plaintiff's agent "with regard to all matter pertaining to

6   the legal services" provided by Tanner.  (*Id.* at 5).  These allegations are insufficient for Tanner to

7   assert his breach of contract claim against Plaintiff.

8          Tanner's allegations—while they need not plead every nuance of the agency relationship

9   between Plaintiff and Hosada—fail to offer sufficient facts to support an inference that an agency

10   relationship existed.  Unlike the plaintiff in *Kristensen*, who detailed a series of contracts and

11   benefits flowing from defendant to defendant, in which series the alleged agency relationship was

12   a key factor, Tanner has not attempted to describe the circumstances of his contract with Hosada

13   or how that connects to Plaintiff.  Tanner does not explain what Hosada said when she retained

14   him, whether he ever spoke with Plaintiff, who he understood to be his client, or even whether

15   Hosada's authority was actual or apparent.

16          Nor does Tanner assert facts about Plaintiff's involvement with the contract.  Tanner

17   claims that Plaintiff retained Hosada as his agent and the Court can determine from Plaintiff's

18   pleadings that Plaintiff retained Hosada to purchase and manage rental homes.  But this assertion

19   does not rise to the level of specificity that the court found sufficient in *WuMac*.  The plaintiff in

20   *WuMac* claimed that the principal and agent had been working in the same form of agent-

21   principal capacity for years to buy airplanes before plaintiff and the agent contracted.  Tanner

22   simply alleges that "Plaintiff retained Hosada…"  (ECF No. 102 at 5).  And unlike the plaintiff in

23   *WuMac*, which asserted that it had personally met with the principal to discuss the sale, Tanner

24   alleges no facts about why he knew Plaintiff was the principal behind Hosada's actions.  Taking

25   away Tanner's legal conclusions—that Hosada acted as Plaintiff's agent—Tanner fails to assert a

26   claim on which relief can be granted.  The Court grants Plaintiff's motion to dismiss.

27          The Court will give Tanner leave to amend, despite Plaintiff's arguments that it should

28   dismiss Tanner's claim with prejudice.  "In the absence of any apparent or declared reason—such

as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962).  The Ninth Circuit has determined that prejudice to the opposing party carries the greatest weight.  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).  "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend."  *Id.* (emphasis in original).  "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment."  *Id.*

Plaintiff addresses none of the *Foman* factors or Ninth Circuit authority in asking this Court to deny Tanner leave to amend.  Plaintiff only asserts that Tanner should not have more than "two bites at the apple" and that further amendments "would be futile."  (ECF No. 105 at 6).  This is insufficient to warrant denying leave to amend.

**B.**     ***The Court grants in part and denies in part Burke and TLOSHB's motion to dismiss.***

1.     The applicable statutes of limitations do not bar Plaintiff's claims.

The statute of limitations for unjust enrichment claims in Nevada is four years.  *See Wilmington Tr., N.A. as Tr. of ARLP Securitization Tr. Series 2014-2 v. Saticoy Bay LLC Series 206 Valerian*, 416 F. Supp. 3d 1077, 1088 (D. Nev. 2019) (citing *In re Amerco Derivative Litig.*, 127 Nev. 196, 252 P.3d 681, 703 (2011) (citing Nev. Rev. Stat. § 11.190(2)(c))).  The statutes of limitations for conversion and for aiding and abetting a breach of fiduciary duty are three years. *See U.S. Bank Nat'l Ass'n v. SFR Invs. Pool 1, LLC*, No. 2:17-cv-1319-JCM-GWF, 2017 WL 2990852, at *3 (D. Nev. July 13, 2017) (citing Nev. Rev. Stat. § 11.190(3)(c)); *see Tsambis v. Irvine*, No. 2:17-cv-2482-JCM-CWH, 2018 WL 3186940, at *7 (D. Nev. June 28, 2018) (citing Nev. Rev. Stat. § 11.190)).

Nevada recognizes the "discovery rule" of accrual of a cause of action for statute of limitations purposes.  *Bemis v. Estate of Bemis*, 114 Nev. 1021, 1024, 967 P.2d 437, 440 (1998).

1

2

3

4

5

> Under the discovery rule, the statutory period of limitations is tolled until the injured party discovers or reasonably should have discovered facts supporting a cause of action. The rationale behind the discovery rule is that the policies served by statutes of limitation do not outweigh the equities reflected in the proposition that plaintiffs should not be foreclosed from judicial remedies before they know that they have been injured and can discover the cause of their injuries.

6

> *Id.* (quoting *Peterson v. Bruen*, 106 Nev. 271, 274, 792 P.2d 18, 20 (1990)).

7

8       The Nevada Supreme Court has followed the discovery rule for conversion, unjust

9   enrichment, and breach of fiduciary duty claims. *See id.* (finding that the statute of limitations for

10   conversion is discovery based); *see Amerco*, 127 Nev. at 228-29, 252 P.3d at 703-04 (remanding

11   and noting that questions of fact remained as to whether appellants' claims, including unjust

12   enrichment and breach of fiduciary duty, were time-barred under the discovery rule).

13   Determining when a plaintiff knew or should have known of the facts giving rise to a claim is

14   generally a question of fact. *See Amerco*, 127 Nev. at 228, 252 P.3d at 703; *Bemis*, 114 Nev. at

15   1025, 967 P.2d at 440. A claim may be dismissed as untimely under 12(b)(6) only when the

16   running of the statute of limitations is apparent on the face of the complaint. *United States ex rel.*

17   *Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013).

18       The Court does not find Plaintiff's claims to be time-barred. Burke and TLOSHB assert

19   that "Plaintiff should be charged with the knowledge and conduct of such wrongdoing of Hosada

20   as early as October 9, 2014, where Plaintiff alleged Hosada signed a deed to Plaintiff." (ECF No.

21   110 at 6). But this argument says nothing about the discovery rule or explains why Plaintiff

22   discovered or reasonably should have discovered facts supporting his cause of action when

23   Hosada signed a deed to him in 2014. To the contrary, Plaintiff's complaint states that the fraud

24   related to this deed occurred in 2019, when Hosada lied to Plaintiff to induce him to send her

25   $320,000 to "save" the house from foreclosure when it had really already been sold. Burke and

26   TLOSHB provide no other argument about when Plaintiff discovered the alleged wrongdoing to

27   support their argument that Plaintiff's claims are time-barred. And when Plaintiff discovered the

28

1  alleged wrongdoing is a question of fact, especially because it is not apparent from the face of the

2  complaint that the statute of limitations has run.

3           The Court also declines to consider Plaintiff's claims against TLOSHB as claims for legal

4  malpractice for the purposes of the statute of limitations.  Plaintiff has not alleged malpractice

5  claims against TLOSHB.  And under Nevada law, malpractice includes an attorney-client

6  relationship, which relationship Plaintiff has not alleged.  *See Mirch v. Frank*, 295 F.Supp.2d

7  1180, 1186 (D. Nev. 2003) (citing *Day v. Zubel*, 112 Nev. 972, 976, 922 P.2d 536, 538 (1996)).

8  Plaintiff points this out in his response, which argument Burke and TLOSHB do not address in

9  reply.  The Court thus declines to consider Plaintiff's claims as those for legal malpractice.

10
11                 2.     The Court grants Burke and TLOSHB's motion to dismiss Plaintiff's
                          aiding and abetting a breach of fiduciary duty claim against them.

12           The Nevada Supreme Court has adopted the Delaware elements for aiding and abetting a

13  breach of fiduciary duty.  *Amerco*, 127 Nev. at 226, 252 P.2d 702.  They require: (1) a fiduciary

14  relationship exists; (2) the fiduciary breached the fiduciary relationship; (3) the third party

15  knowingly participated in the breach; and (4) the breach of the fiduciary relationship resulted in

16  damages.  *Id.*  Burke and TLOSHB cite *Levine v. Diamanthuset, Inc.*, a Ninth Circuit case in

17  which the court established the elements for aiding and abetting securities fraud.  *See Levine v.*

18  *Diamanthuset, Inc.*, 950 F.2d 1478, 1483 (9th Cir. 1991).  "To state a claim of aiding and abetting

19  securities fraud, one must plead (1) the existence of an independent primary wrong, (2) actual

20  knowledge or reckless disregard by the alleged aider and abettor of the wrong and of his or her

21  role in furthering it, and (3) substantial assistance in the wrong."  *Id.*  But courts in this district

22  rely on Nevada's elements for aiding and abetting in breach of fiduciary duty.  *See RFK Retail*

23  *Holdings, LLC v. Eastern Real Estate LLC*, No. 2:15-cv-01446-RCJ-CWH, 2016 WL 659717, at

24  *5 (D. Nev. Jan. 18, 2016); *see Streeter v. Izadi*, No. 2:18-cv-01916-RFB-VCF, 2021 WL

25  4301480, at *4 (D. Nev. Sept. 21, 2021); *see Tsambis*, 2018 WL 3186940, at *11.  This is

26  because "[i]t is a long-recognized principle that federal courts sitting in diversity apply state

27  substantive law and federal procedural law."  *Shady Grove Orthopedic Associates, P.A. v. Allstate*

28

1   *Ins. Co.*, 559 U.S. 393, 417 (2010) (Ginsburg, J., concurring) (citing *Hanna v. Plumer*, 380 U.S.

2   460, 465 (1965)).

3          In Nevada, a breach of fiduciary duty is analogous to fraud.  *See Amerco*, 127 Nev. at 228,

4   252 P.3d at 703.  Fraud claims are subject to heightened pleading requirements under Federal

5   Rule of Civil Procedure 9(b).  *See id.* at 227, 252 P.3d at 702.  The Federal pleading standards

6   apply—even to state law claims—because the "Federal Rules of Civil Procedure apply

7   irrespective of the source of subject matter jurisdiction, and irrespective of whether the

8   substantive law at issue is state or federal."  *Vess v. Ciba-Ceigy Corp. USA*, 317 F.3d 1097, 1102

9   (9th Cir. 2003).  Averments of fraud must be accompanied by "the who, what, when, where, and

10  how" of the misconduct charged.  *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).  In cases

11  where fraud is not a necessary element of a claim, but the plaintiff alleges a unified course of

12  fraudulent conduct and relies entirely on that course of conduct as the basis of a clam, the claim is

13  said to be "grounded in fraud" and must meet the Rule 9(b) standard.  *See Vess*, 317 F.3d at 1104-

14  04.

15         The Court grants Burke and TLOSHB's motion to dismiss Plaintiff's aiding and abetting

16  breach of fiduciary duty claim against them.[2]  As a preliminary matter, the Court is unpersuaded

17  by Burke and TLOSHB's argument that it should apply the elements articulated in *Levine v.*

18  *Diamanthuset, Inc.*—a Ninth Circuit case—rather than the Nevada Supreme Court's accepted

19  elements.  Not only was the court in *Levine* discussing aiding and abetting securities fraud, but

20  the case is also here under diversity jurisdiction, rather than federal question jurisdiction.  The

21  Court will thus apply Nevada substantive law, including its elements for aiding and abetting a

22  breach of fiduciary duty.

23         Although Burke and TLOSHB ask the Court to apply the wrong standard, they correctly

24  argue that a heightened pleading standard applies to this claim.  Not only is breach of fiduciary

25

26  _____

27  [2] The Court notes that it is does not make this decision because of Burke and TLOSHB's
    argument that Plaintiff was prohibited from adding a claim to his amended complaint.  Burke and
    TLOSHB cite no authority for this argument.  Nor have they cited any statement from the Court's
28  previous order which would prohibit Plaintiff from adding claims.

duty analogous to fraud in Nevada, Plaintiff's aiding and abetting breach of fiduciary duty claim is grounded in fraud.  Plaintiff asserts that Burke and TLOSHB's contribution to Hosada's breach of fiduciary duty involved creating fraudulent legal documents for her.  The heightened 9(b) standard thus applies.

Under that standard, Plaintiff fails to plead Burke and TLOSHB's knowing participation in Hosada's breach of fiduciary duty with particularity.  While Plaintiff alleges facts like dates, amounts, and sources of Hosada's online banking transfers to Burke and TLOSHB, these transfers are not the fraud at issue.  Putting aside the conclusory allegations that Burke and TLOSHB aided and abetted Hosada, Plaintiff alleges only that "[n]umerous deeds were fabricated," Burke's signature appears on "some" of the deeds, Burke would not have received money had "the deeds not been forged."  (ECF No. 106 at 10).  Absent details about the deeds that were allegedly fabricated, details about which Defendant allegedly forged which deeds, when each Defendant allegedly forged each deed, how Plaintiff learned the deeds were forged—*et cetera*—Plaintiff does not plead aiding and abetting breach of fiduciary duty with particularity against Burke and TLOSHB.  The Court thus grants Burke and TLOSHB's motion to dismiss this claim against them.

### 3.    The Court denies Burke and TLOSHB's motion to dismiss Plaintiff's unjust enrichment claim against TLOSHB.

The doctrine of unjust enrichment applies when there is no legal contract, but the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another or should pay for.  *See Snider v. Lithia Real Est., Inc.*, No. 3:11-cv-0596-HDM, 2011 WL 4062375, at *1-2 (D. Nev. Sept. 12, 2011).  The elements are: (1) a benefit conferred on the defendant by the plaintiff; (2) appreciation by the defendant of such a benefit; and (3) acceptance and retention by the defendant of such a benefit.  *Unionamerica Mortg. & Equity Tr. v. McDonald*, 97 Nev. 210, 211-12, 626 P.2d 1272, 1273 (1981).  An action based on a theory of unjust enrichment is not available when there is an express, written contract or agreement.  *Leasepartners Corp v. Robert L. Brooks Trust*, 113 Nev. 747, 756, 942 P.2d 182, 187 (1997).  Notably, the elements of unjust enrichment do not include

intent.  *See Limbach Co., LLC v. City of Phila*, 905 A.2d 567, 577 (Pa. Commw. Ct. 2006) ("The polestar of the unjust enrichment inquiry is whether the defendant has been *unjustly* enriched; the intent of the parties is irrelevant.").

The Court denies Burke and TLOSHB's motion to dismiss Plaintiff's unjust enrichment claim against TLOSHB.  Plaintiff has alleged that TLOSHB is in possession of his money which in good conscience and justice, TLOSHB should not retain.  While Plaintiff fails to name TLOSBH in the language following his fifth cause of action—and fails to acknowledge this in response—the facts in Plaintiff's complaint meet the elements of unjust enrichment.  First, Plaintiff asserts that Hosada transferred thousands of dollars of Plaintiff's money to Burke or TLOSHB between July 2, 2018 and September 24, 2018 and from July 30, 2021 to August 14, 2021.  (ECF No. 106 at 6, 8).  Second, Plaintiff alleges that TLOSBH appreciated the benefit of those funds because Burke—the sole manager for TLOSHB—spent the money transferred to him and TLOSHB.  Third, Plaintiff alleges that TLOSHB accepted and retained the money, which Burke later spent.  (ECF No. 106 at 8).  While TLOSHB argues that "no facts allege that TLOSHB had knowledge or conferring or appreciating a benefit from Mr. Miayayama," TLOSHB does not address Plaintiff's allegations that TLOSHB's managing member—Burke— spent the money received in TLOSHB's account.   (*Id.* at 8) (describing online banking transfers of Plaintiff's money to "burke, STEVEN, or law office of steven h burke," $112,000 of which "appears to have been transferred directly to Mr. Burke," some of which was "withdrawn as a cash withdrawal" or "spent on personal ATM or debit card transactions, and the rest was spent, through checks, on other personal expenditures.").  And although TLOSHB is correct that Plaintiff does not include TLOSHB in his sentences following his fifth cause of action, TLOSHB is wrong that "Plaintiff does not allege TLOSBH conferred a benefit" and "[e]ssential information was not provided such as: pertinent dates; when; where; and how [TLOSHB] conferred a benefit from Mr. Miyayama."  (*Id.* at 11).  To the contrary, Plaintiff asserts that TLOSHB received his money during specific timeframes through online transfers.  The Court thus denies Burke and TLOSHB's motion to dismiss Plaintiff's unjust enrichment claim against TLOSHB.

1

2

    4.    The Court denies Burke and TLOSHB's motion to dismiss Plaintiff's conversion claim against TLOSHB.

3

4

5

6

7

8

9

10

Conversion is "a distinct act of dominion wrongfully exerted over another's personal property in denial of, or inconsistent with his title or rights therein *or* in derogation, exclusion, or defiance of such rights." *M.C. Multi-Family Development, L.L.C. v. Crestdale Associates, Ltd.*, 124 Nev. 901, 910-911, 193 P.3d 536, 542-43 (Nev. 2008) (internal citations and quotations omitted) (emphasis in original). "Additionally, conversion is an act of general intent, which does not require wrongful intent and is not excused by care, good faith, or lack of knowledge." *Id.* (internal citations and quotations omitted). "Whether conversion has occurred is…a question of fact for the jury." *Id.* (internal citations and quotations omitted).

11

12

13

14

15

16

17

18

19

20

21

22

The Court denies Burke and TLOSHB's motion to dismiss Plaintiff's conversion claim against TLOSHB. Without citing authority, Burke and TLOSBH argue that Plaintiff's claim of conversion against TLOSHB fails because "the elements to sustain a cause of action for Conversion require an intentional act." (ECF No. 110 at 12). But Nevada Supreme Court authority states otherwise. And while Burke and TLOSHB argue that "Plaintiff does not allege any facts that TLOSHB intentionally exerted right or title over Mr. Miyayama's money or property," as discussed regarding Plaintiff's unjust enrichment claim, Plaintiff has alleged that TLOSHB received his money during specific timeframes through online transfers. Because conversion is an act of general intent, and Plaintiff asserts that TLOSHB received his money in derogation of Plaintiff's rights over it, Plaintiff has sufficiently asserted conversion against TLOSHB. The Court thus denies Burke and TLOSHB's motion to dismiss Plaintiff's conversion claim against TLOSHB.

23

    ***C.    The Court grants in part and denies in part Tanner's motion to dismiss.***

24

25

26

Tanner filed a joinder to Burke and TLOSHB's motion to dismiss that copies Burke and TLOSHB's motion almost verbatim. (ECF No. 111) However, because it purports to advance its own arguments and seeks slightly different relief—dismissing Plaintiff's claims against

27

28

Tanner—the Court construes it as a motion to dismiss in the interest of moving the case forward.[3]
*See Cole v. Carey*, No. CIV S-06-0336 GEB GGH, 2007 WL 4355171, at *1 (construing a
joinder as a separate motion to dismiss because it contained legal analysis specific to the joining
party). The Court grants it in part and denies it in part for similar reasons as Burke and
TLOSHB's motion.

> 1. The Court grants Tanner's motion to dismiss Plaintiff's aiding and abetting
> a breach of fiduciary duty claim.

Tanner's motion relies on the same Ninth Circuit authority as Burke and TLOSHB's. As
explained above, Nevada law is controlling here. But the heightened pleading standard also
applies, which standard Plaintiff does not meet. Plaintiff's allegations about Tanner's alleged
involvement in forging deeds contain even less factual detail than Plaintiff's allegations about
Burke's involvement. The Court thus grants Tanner's motion to dismiss Plaintiff's aiding and
abetting breach of fiduciary duty claim against him.

> 2. The Court denies Tanner's motion to dismiss Plaintiff's unjust enrichment
> claim.

Tanner's motion to dismiss Plaintiff's unjust enrichment claim fails for similar reasons as
Burke and TLOSHB's motion to dismiss. Tanner argues that he "admittedly accepted money
from Hosada as a retainer deposit with the specific purpose of providing legal services for the
benefit of plaintiff, however he had no knowledge of the service of the funds." (ECF No. 111 at
11-12). Taking Plaintiff's allegations as true, and considering Tanner's concession, Plaintiff has
alleged the elements of unjust enrichment, including appreciation of the benefit. Plaintiff alleged
benefit conferred on Tanner ("Mr. Tanner regularly received a portion of Mr. Miyayama's
investments"), that Tanner appreciated the benefit ("[Tanner] provid[ed] legal services to
[Hosada] in exchange for payments, which [he] repeatedly received shortly after Mr. Miyayama

---

[3] The Court will not do so in the future. As Plaintiff points out, the failure to file the "joinder" as
a separate motion meant that response and reply deadlines were not triggered. (ECF No. 115 at
1). If parties seek relief from the Court distinct from that which another party has requested, they
must file a motion.

1    transferred money to accounts owned by Ms. Hosodoa [sic] or by Ms. Hosada and Mr. Burke

2    jointly"), and that Tanner accepted the money and retained it (a point which Tanner concedes).

3    (ECF No. 106 at 10, 14).  The Court thus denies Tanner's motion to dismiss Plaintiff's unjust

4    enrichment claim.

5                   3.      The Court denies Tanner's motion to dismiss Plaintiff's conversion claim.

6          Just as Burke and TLOSHB's motion to dismiss fails by relying on intent, so does

7    Tanner's.  Conversion is an act of general intent.  And Plaintiff has alleged that Tanner

8    wrongfully asserted dominion over his money by accepting it in exchange for legal services.  The

9    Court thus denies Tanner's motion to dismiss Plaintiff's conversion claim against Tanner.

10          **D.      The Court denies Plaintiff's motion to extend discovery.**

11         Under Local Rule 26-3, a motion to extend a deadline set forth in a discovery plan must

12   be received by the court no later than twenty-one days before the expiration of the subject

13   deadline.  LR 26-3.  A request made after the expiration of the subject deadline will not be

14   granted unless the movant also demonstrates that the failure to act was the result of excusable

15   neglect.  LR IA 6-1.  If a party moves to extend a deadline twenty-one days before it expires, the

16   motion must, in addition to satisfying the requirements of Local Rule IA 6-1, be supported by a

17   showing of good cause for the extension.  LR 26-3.  The good cause standard primarily considers

18   the diligence of the party seeking the extension.  *See Johnson v. Mammoth Recreations, Inc.*, 975

19   F.2d 604, 699 (9th Cir. 1992).  Although prejudice to the opposing party may also be considered,

20   when the movant "fail[s] to show diligence, the inquiry should end."  *Coleman v. Quaker Oats*

21   *Co.*, 232 F.3d 1271, 1294-95 (9th Cir. 2000) (internal quotations omitted).

22         The Court denies Plaintiff's motion to extend.  Plaintiff seeks to extend deadlines which

23   had already passed at the time he filed his motion: the deadline to amend pleadings or add parties,

24   the expert deadline, and the rebuttal expert deadline.  But Plaintiff has not demonstrated

25   excusable neglect for failing to move to extend these deadlines before they passed.  The Court

26   denies Plaintiff's motion to extend these deadlines.

27         Nor has Plaintiff demonstrated good cause to extend the deadlines which, at the time he

28   filed his motion, were more than twenty-one days away: the close of discovery, dispositive

motion, and joint pretrial order deadlines.  Plaintiff did not demonstrate diligence because his only reason for not complying with the discovery deadlines is that the parties engaged in motion practice.  While the Court does not find it "'careless' to refrain from engaging fully in discovery" while dispositive motions are pending, parties must move to stay discovery; they cannot declare a stay on their own.[4]  (ECF No. 120 at 3).  Additionally, many of the delays Plaintiff cites— including substituting Burke for Hosada, obtaining leave to file a first amended complaint, and entering defaults—occurred before the parties stipulated to their discovery plan and scheduling order.  (*Id.* at 2).  And the Court issued its decision on the parties first round of dispositive motions about a month and a half after it entered the parties' discovery plan and scheduling order.  (*Compare* ECF No. 84 *with* ECF No. 99).  The Court thus denies Plaintiff's motion to extend.  Plaintiff may re-raise his motion to the extent he believes he can address these deficiencies.

**IT IS THEREFORE ORDERED** that Plaintiff's motion to dismiss Tanner's amended counterclaim (ECF No. 105) is **granted.**  Tanner's counterclaim is **dismissed without prejudice and with leave to amend**.

**IT IS FURTHER ORDERED** that Burke and TLOSHB's motion to dismiss Plaintiff's second amended complaint (ECF No. 110) is **granted in part and denied in part.**  Plaintiff's aiding and abetting breach of fiduciary duty claim against Burke and TLOSHB is **dismissed without prejudice and with leave to amend.**

**IT IS FURTHER ORDERED** that Tanner's joinder to Burke and TLOSHB's motion to dismiss (ECF No. 111) is also **granted in part and denied in part.**  Plaintiff's aiding and

---

[4] To suspend discovery while awaiting the outcome of pending motions, parties must move for a stay of discovery because the Federal Rules of Civil Procedure do not provide for automatic or blanket stays of discovery when a potentially dispositive motion is pending.  *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 600 (D. Nev. 2011).  A party seeking to stay discovery pending the resolution of a potentially dispositive motion bears the heavy burden of establishing that discovery should be stayed.  *See, e.g.*, *Turner Broadcasting System, Inc. v. Tracinda Corp.*, 175 F.R.D. 554, 556 (D. Nev. 1997).

abetting breach of fiduciary duty claim against Tanner is **dismissed without prejudice and with leave to amend.**

  **IT IS FURTHER ORDERED** that Plaintiff's motion to extend time (ECF No. 114) is **denied.**

  DATED: May 25, 2022

                _____

                DANIEL J. ALBREGTS
                UNITED STATES MAGISTRATE JUDGE