**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| Yuichi Miyayama, | Case No. 2:20-cv-01683-DJA |
| Plaintiff, | |
| v. | **Order** |
| Steven H. Burke, as executor of the Estate of Noriko Hosoda; et al. | |
| Defendants. | |

In 2013, Yuichi Miyayama decided to invest money with Noriko Hosoda, a real estate broker who promised to use Miyayama's investment money to buy homes in Miyayama's name, rent them out, and manage them for his benefit. Over their five-year investing relationship, Hosoda purported to buy twenty-four homes with Miyayama's money, often asking for additional sums to save some of the homes from foreclosure. However, at the end of their investing relationship, Miyayama owned none of the homes Hosoda said he did. Miyayama sued Hosoda and her various business entities. Days after Miyayama filed his complaint, Hosoda passed away and neither her estate nor her companies defended against Miyayama's lawsuit. Miyayama obtained a clerk's default against them. (ECF No. 83). Miyayama also sued Hosoda's attorney—Mont Tanner—but voluntarily dismissed his claims against Tanner before trial. (ECF No. 204).

The case proceeded to a bench trial on Miyayama's claims against Hosoda's son Steven H. Burke and his law office, The Law Office of Steven H. Burke ("TLOSHB") for their involvement in Hosoda's scheme. The Court found that Miyayama prevailed on certain of his claims against Burke and TLOSHB, but that Miyayama's damages evidence was too thin for the Court to calculate compensatory damages against Burke and TLOSHB. So, the Court awarded Miyayama nominal damages against Burke and TLOSHB totaling $1 and awarded Miyayama punitive damages totaling $300,000.00. (ECF No. 227).

Miyayama now submits a bill of costs, which bill Burke and TLOSHB contest.  (ECF Nos. 229, 230).  Miyayama and Tanner also seek to each recoup half of the cost bond that Miyayama deposited with the Court at the beginning of the action.  (ECF Nos. 238, 239).  Finally, Miyayama moves for default judgment against Hosoda and S&N Investments, LLC (one of her defaulted companies), and an award of $1,491,670.39 with post-judgment interest, which amount constitutes the entirety of Miyayama's investment on which he asserts he never received a return. (ECF No. 240).

Because Miyayama is entitled to certain of the costs he seeks, but Burke and TLOSHB successfully object to others, the Court taxes only some of the costs Miyayama seeks.  Although Miyayama and Tanner have repeatedly failed to follow the Court's orders regarding their attempts to recoup the cost bond in this case, the Court finds that it can determine their intent from their filings and orders the cost bond released.  Finally, the Court denies Miyayama's motion for default judgment without prejudice because Miyayama did not brief the appropriate standard.

## I.      Bill of costs.

On May 30, 2025, judgment was entered in favor of Miyayama and against Burke and TLOSHB on Miyayama's claims for unjust enrichment, conversion, and legal malpractice.  (ECF No. 228).  On June 12, 2025, Miyayama filed a bill of costs.  (ECF No. 229).  Burke and TLOSHB filed an objection to the bill of costs.  (ECF No. 230).  Miyayama filed a reply.  (ECF No. 232).  The Court taxes costs as follows.

### A.      Fees for service of summons and subpoena.

Amount requested:  $2,474.00.

Burke and TLOSHB object to costs totaling $175.00 for serving Keiko Rudder; $25.00 for serving Toshio Hosoda; $325.00 for rush service on Keiko Rudder; $60.96 for a subpoena and witness fee for Keiko Rudder to testify; $95.00 for substitute service on the residence of Toshio Hosoda; $60.96 for a subpoena and witness fee for Toshio Hosoda to testify; and $99.00 for service on Mont Tanner.

Burke and TLOSHB argue that the Court should not allow Miyayama to recover costs related to serving these summonses and subpoenas because Miyayama never called Keiko

Rudder, or Toshio Hosoda to testify at trial.  In reply, Miyayama argues that Burke and TLOSHB "cite no authority suggesting that [the witnesses not testifying at trial] makes [the costs of serving the witnesses] nonrecoverable or nontaxable."  (ECF No. 232).  Miyayama then states that "[t]he statute provides in relevant part for taxation of fees for '[s]erving a subpoena…for a witness.'  28 U.S.C. § 1921(a)(1)(B)."  However, 28 U.S.C. § 1921 addresses the United States Marshal's fees, not a party's.  *See Travelers Ins. Co. v. Lawrence*, 509 F.2d 83, 87 (9th Cir. 1974) (explaining that 28 U.S.C. § 1921 "prescribes the fees which may be collected for services performed by a United States marshal…").  And Miyayama cites no authority and provides no reasoning why this statute should apply to his costs.  Ultimately, the minutes of the Court do not reflect testimony by these witnesses and so, the Court is unable to tax these costs.

Burke and TLOSHB add that Miyayama voluntarily dismissed this action against Mont Tanner, so the Court should not allow Miyayama to recover amounts associated with serving him.  In reply, Miyayama concedes that the $99.00 cost for service on Tanner may be eliminated.  So, the Court does not tax this cost.

Costs are taxed for Miyayama in the amount of **$1,633.08** and are included in the judgment.

### B.    *Fees for printed or electronically recorded transcripts necessarily obtained for use in the case.*

Amount requested:  $2,665.20.

Burke and TLOSHB object to $934.60 in costs associated with a deposition transcript for Steven Burke and Mont Tanner from Garcia McCall & Co.  Burke and TLOSHB argue that Tanner was a co-defendant in the action who Miyayama voluntarily dismissed, so the Court should not permit Miyayama to recover this cost.  (ECF No. 230).  Burke and TLOSHB also point out that the invoice does not differentiate between the transcript for Burke and the transcript for Tanner.  So, Burke and TLOSHB assert that the Court should reduce the cost by half.  In reply, Miyayama concedes that the cost of the bill may be reduced by $467.30 for the deposition transcript for Tanner.  (ECF No. 232).  So, the Court will reduce this cost award by $467.30.

Costs are taxed for Miyayama in the amount of **$2,197.90** and are included in the judgment.

**C.      Fees for witnesses.**

Amount requested:  $2,641.04.

Burke and TLOSHB object to $630.97, which represents the cost of witness John Snow's travel to Nevada to testify.  (ECF No. 230).  Burke and TLOSHB assert that Miyayama could have used an in-state expert, but opted to use an out-of-state expert, so the Court should not allow Miyayama to recover this cost.  The rate for witness fees, mileage, and subsistence are fixed by statute, including for expert witnesses.   28 U.S.C. § 1821; LR 54-5(a),(b).  Under 28 U.S.C. § 1821(c)(1):

> A witness who travels by common carrier shall be paid for the actual expenses of travel on the basis of the means of transportation traveled to and from such witness's residence from the place of attendance.  Such a witness shall utilize a common carrier at the most economical rate reasonably available.  A receipt or other evidence of actual cost shall be furnished.

The Court has no reason to believe that Snow did not utilize a common carrier at the most economical rate reasonably available.  So, the Court will permit Miyayama to recover the full amount of Snow's plane ticket.

Costs are taxed for Miyayama in the amount of **$2,641.04** and are included in the judgment.

**D.      Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case.**

Amount requested: $9,097.09.

Burke and TLOSHB object to $1569.75 of this amount, which includes 2,066 color copies at 0.59 cents per page and 787 black/white copies at 0.15 cents per page.  (ECF No. 230).  Burke and TLOSHB also object to $1,571.93 of this amount, which includes 2,068 color copies at 0.59 cents per page and 786 black/white copies at 0.15 cents per page.  Burke and TLOSHB also object to $5,955.41 of this amount, which includes 6,198 color copies at 0.79 cents per page and

2,268 black/white copies at 0.14 cents per page.  Burke and TLOSHB argue that, based on what documents Miyayama used at trial, the number of documents and color copies were unnecessary and excessive.  Burke and TLOSHB also argue that the per-page cost is excessive.

Miyayama argues in reply that he paid market rates for the copies and that the documents were admitted into evidence by stipulation of the Defendants.  (ECF No. 232).  He adds that the copies were for the Court, Clerk, witnesses, and opposing counsel, not the mere convenience of counsel.

Local Rule 54-6 allows costs for exemplification, copies of papers, disbursements for printing.  These include the costs of copies of an exhibit necessarily attached to a filed document and the costs of copies of trial exhibits.  However, Miyayama has not attached an itemization of costs with a detailed description of the nature of these costs.  *See* LR 54-6(c).  So, the Court sustains this objection.

Costs are taxed for Miyayama in the amount of **$0.00** and are included in the judgment.

### E.    Other costs.

Amount requested: $500.00.

Burke and TLOSHB assert that Miyayama attributes this amount to half of the $1,000.00 cost bond that has not yet been returned to him and argue that this is not a taxable cost.  (ECF No. 230).  Miyayama responds that "[i]f this amount is not taxed as a cost, it should be returned to [Miyayama] separately by the Court."  (ECF No. 232).  Miyayama has pointed to no basis for the Court to tax this as a cost.  As outlined more fully below, Miyayama and Tanner have repeatedly failed to abide by the Court's instruction on how to obtain a return of their cost bond, which is why they have not yet received it.  The Court sustains this objection.

Costs are taxed for Miyayama in the amount of **$0.00** and are included in the judgment.

## II.    Cost bond.

In September of 2021, in two motions, Tanner,  Steven H. Burke, TLOSHB, and S&Z Investments, LLC moved to demand security of costs "pursuant to [Nevada Revised Statute] § 18.130(1)."  (ECF Nos. 50, 51).  The Court granted those motions.  (ECF No. 86).  Miyayama then deposited $1,000.00 into the registry account of the Court.  (ECF No. 91).

On December 27, 2024, Miyayama and Tanner stipulated to dismiss all claims between them and agreed that the "$500 cost bond posted by Miyayama shall be released by the Clerk of Court to Tanner." (ECF No. 195). The Court denied that stipulation, explaining that "it is unclear to the Court whether Tanner has intentionally declined to request a release of interest or whether that was an oversight…In any renewed stipulation, Miyayama and Tanner must indicate whether Tanner will request a release of interest." (ECF No. 197).

On January 3, 2025, Miyayama and Tanner filed a renewed stipulation of dismissal, in which they stated that, "Mont Tanner releases his interest in that bond," which was not entirely clear. But Tanner and Miyayama ultimately only requested a return of the $500.00 cost bond, without accounting for interest accrued thereon. (ECF No. 199). The Court granted that stipulation and further ordered that the "Clerk of Court is kindly directed to release $500.00 of the cost bond entered in this case directly to Mont Tanner." (ECF No. 204).

Perplexingly, on April 10, 2025, Miyayama and Tanner filed another stipulation of dismissal. (ECF No. 222). The April 10, 2025, stipulation was nearly identical to the January 3, 2025, stipulation other than the addition of the words "along with any and all accrued interest thereon," after the sentences requesting the Clerk of Court to release the $500.00 cost bond to Tanner. *Compare* (ECF No. 222) *with* (ECF No. 199). The Court denied that stipulation, explaining the following:

> It appears the parties may have misconstrued the Court's meaning of "interest" in its prior order. But they do not explain that in their stipulation. And they do not explain whether the Clerk of Court has already released $500 to Tanner, or not. Without this explanation, it is unclear if the parties are requesting that the Clerk of Court release *only* the accrued interest on the $500 that the Clerk of Court already released to Tanner; if they are requesting that the Clerk of Court release an *additional* $500, plus accrued interest on *that* $500 to Tanner; or if they claim that the $500 was never released in the first place and seek to remedy that….[Additionally], Tanner and Miyayama have already stipulated to dismiss the claims between them. So, it is unclear why they have filed a second stipulation to dismiss these claims. And the parties provide no explanation in their amended stipulation about whether and why they are seeking further dismissal when there are no more claims to dismiss between them. Because of these discrepancies, the Court DENIES Miyayama and

Tanner's stipulation.  (ECF No. 222).  Any future motions or stipulations must clearly explain the relief sought and the reasons and authority for that relief.

(ECF No. 224).

On July 21, 2025, Miyayama filed a request for return of cost bond.  (ECF No. 238).  That request states simply that Miyayama "requests the $500 cost bond posted by plaintiff as it relates to defendants Steven H. Burke and the Law Office of Steven H. Burke, be released by the Clerk of Court to plaintiff."  Miyayama does not mention interest accrued on the bond.  The next day, Tanner also submitted a request for return of cost bond, filed as a "proposed order."  (ECF No. 239).  In it Tanner stated that "[o]n April 10, 2025, Counsel for Plaintiff and Defendant MONT E. TANNER filed a Second Amended Stipulation and Order expressly providing that 'the $500 cost bond posted by Plaintiff Miyayama shall be released by the Clerk of Court to TANNER along with any accrued interest thereon.'"  (ECF No. 239).  Tanner again requested that the $500 cost bond be released and attached the April 10, 2025, stipulation.  (ECF No. 239).  Tanner made no mention of the fact that the Court denied the April 10, 2025, stipulation or of the Court's requirement that "[a]ny future motions or stipulations must clearly explain the relief sought and the reasons and authority for that relief."  (ECF No. 224).

The Court has confirmed that no part of the cost bond has been released to either Miyayama or Tanner.  To avoid any further issues, the Court will order the Clerk of Court to release half of the $1,000.00 cost bond and half of the interest accrued thereon to each party.  So, the Clerk of Court shall release $500.00 plus half of the interest accrued on the total $1,000.00 to Tanner.  The Clerk of Court shall release $500.00 plus half of the interest accrued on the total $1,000.00 to Miyayama.

### III.    Default judgment.

Under Federal Rule of Civil Procedure 55(b), after default has been entered, a party seeking relief other than a sum certain must apply to the Court for a default judgment.  *Michael's Gourmet Pantry, Inc. v. Back of the House, LLC*, No. 2:22-CV-01953-ART-BNW, 2025 WL 1455411, at *1 (D. Nev. May 20, 2025).  In deciding whether to grant default judgment, the Court considers factors including "(1) the possibility of prejudice to the plaintiff[;] (2) the merits of

plaintiff's substantive claim[;] (3) the sufficiency of the complaint[;] (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect[;] and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *See NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616 (9th Cir. 2016) (citing *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986)). Courts regularly deny motions for default judgment that fail to cite and discuss relevant law and *Eitel* factors. *See Frenchans LLC v. Vestige LLC*, No. CV-22-00241-PHX-JZB, 2023 WL 3952432, at *2 (D. Ariz. Jan. 25, 2023) (collecting cases); *see Michael's Gourmet Pantry*, 2025 WL 1455411, at *1.

Miyayama moves for default judgment against the Steven H. Burke as Executor of the Estate of Noriko Hosoda and against S&N Investments, LLC.[1]   However, Plaintiff's motion for default judgment does not cite or argue any of the *Eitel* factors.  So, the Court denies it without prejudice and with leave to refile.

---

[1] Burke and TLOSHB filed a limited opposition.  (ECF No. 241).  They "object to any findings by the court that would implicate them with respect to joint and several liability," citing Nevada Revised Statute ("NRS") § 41.141, which statute addresses comparative negligence.  However, Miyayama points out in reply that he has "never pled joint and several liability in any of his amended complaints for liability against the Burke Defendants [(Burke and TLOSHB)] based on liability against the Defaulted Defendants [(Hosoda's Estate and S&N)]."  (ECF No. 242).  And Miyayama points out that the Burke Defendants never raised any comparative negligence defense in this action.  Because Burke and TLOSHB do not address these issues or explain why NRS § 41.141 applies, their argument is not fully developed.  The Court declines to address it.  *See Kor Media Group, LLC v. Green*, 294 F.R.D. 579, 582 (D. Nev. 2013) (explaining that Courts only consider well-developed arguments).

Additionally, Burke and TLOSHB assert that Miyayama has not proven the amount of the damages he seeks against Hosoda's Estate and S&N.  However, Burke and TLOSHB cannot raise these arguments on behalf of Hosoda's Estate or S&N because, as defaulted parties, Hosoda's Estate and S&N are treated as non-parties.  *See Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1159 (9th Cir. 2010) (explaining that a defaulted defendant "should be treated as a non-party" and "loses many of the rights of a party, chief among them the right to contest the factual allegations of the complaint.").

**IT IS THEREFORE ORDERED** that the Court taxes costs as follows:

Fees of the Clerk……………………………………………………$400.00
Fees for service of summons and subpoena………………………...$1633.08
Fees for printed or electronically recorded transcripts
necessarily obtained for use in the case……………………………$2,197.90
Fees for witnesses:…………………………………………………$2,641.04
Fees for exemplification and the costs of making copies of any
materials where the copies are necessarily obtained for use in
the case………………………………………………………………$0.00
Compensation of interpreters and costs of special
interpretation services under 28 U.S.C. § 1828……………………...$4,632.00
Other costs……………………………………………………………$0.00

**Total**……………………………………………………………..**$11,504.02**

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to release the

$1,000.00 bond posted at ECF No. 91 as follows:

(1) the Clerk of Court is kindly directed to disburse and send $500.00 of the cost bond and
half of any interest payable to Mont E. Tanner:

Mont E. Tanner
2950 East Flamingo Road, Suite G
Las Vegas, NV 89121

(2) the Clerk of Court is kindly directed to disburse and send $500.00 of the cost bond and
half of any interest payable to Yuichi Miyayama:

Yuichi Miyayama
c/o Anthony Stirling
Christiansen Law, PLLC
311 S. State St., Ste 250
Salt Lake City, UT 84111

**IT IS FURTHER ORDERED** that Miyayama's motion for default judgment (ECF No.

240) is **denied without prejudice.**

DATED: October 28, 2025

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE